**E-FILED**
Friday, 07 September, 2007  08:51:47 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. CR07-20044-001 |
| | ) | |
| ROBERT MICHAEL QUINLAN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S POSITION
REGARDING OPEN PLEA OF GUILTY**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

of America by Rodger A. Heaton, United States Attorney for the Central District of

Illinois, and Eugene L. Miller, Assistant United States Attorney, hereby submits to the

Court the following information regarding the defendant's plea of guilty in the above

captioned case:

THE CHARGES

1.      The single-count indictment in this cause charges the defendant with

Conspiracy to Manufacture Methamphetamine Involving Five Grams or More in

violation of Title 18, United States Code, Section 922(g).

ELEMENTS OF THE CHARGE

2.      The offense of Conspiracy to Manufacture Methamphetamine Involving

Five Grams or More in violation of Title 21, United States Code, Sections 846 and

841(a)(1) & (b)(1)(A)(iii) has the following elements, each of which the prosecution must

- 2 -

prove beyond a reasonable doubt:

    a.    First, that the conspiracy as charged in Count 1 of the indictment existed;

    b.    Second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy; and

    c.    Third, that the conspiracy involved five grams or more of methamphetamine.

3.    A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.  A conspiracy may be established even if its purpose was not accomplished.

4.    The term "knowingly" means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident.

## POTENTIAL PENALTIES

5.    The charge of Conspiracy to Manufacture Methamphetamine Involving Five Grams or More in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(A)(iii), a Class B felony, has the following potential penalties:

    a.    Mandatory minimum five year period of imprisonment to maximum forty year period of imprisonment;

    b.    Maximum $2,000,000 fine; and

    c.    Mandatory minimum four year period of supervised release to maximum five year period of supervised release.

6.    The defendant will be required to pay the mandatory $100 Special Assessment for the single count of the Indictment to which the defendant is entering a

- 3 -

Plea of Guilty as required under Title 18, United States Code, Section 3013.

7.      Upon violation of any of the terms of the defendant's supervised release, the supervised release may be revoked and the defendant may be imprisoned for all or part of the supervised release period without credit for time previously served.

8.      The Court may be required to order the defendant to pay restitution. Restitution may include the cost of incarceration and supervision.  The Court may order restitution in whatever amount it deems proper.

ADVISORY SENTENCING GUIDELINES

9.      The Court will be free to impose whatever sentence it deems appropriate up to the statutory maximum.  The Court will calculate the defendant's offense level and criminal history category under the United States Sentencing Guidelines, and the Court will use those calculations to arrive at an advisory sentencing range under the Guidelines.  The Court must consider the advisory Sentencing Guideline range when imposing sentence.  The Court shall also consider the other factors listed under Title 18, United States Code, Section 3553(a) in determining the specific sentence to be imposed. Although the Sentencing Guidelines are advisory, the Court may choose to impose sentence in accordance with the Sentencing Guidelines.

10.      The defendant will not be allowed to withdraw his guilty plea because of an objection to the calculation of the advisory Sentencing Guidelines or to the Court's sentencing findings or rulings or because the defendant receives a sentence higher than that recommended by either party.

- 4 -

FACTUAL BASIS FOR PLEA

11.    The United States hereby submits that if this matter went to trial it would present the following facts to a jury to prove the defendant's guilt of the charged offense beyond a reasonable doubt:

Pseudoephedrine can be used as a precursor chemical in the unlawful manufacture of methamphetamine.  Therefore, the sale of products containing pseudoephedrine has been restricted by the laws of the State of Illinois, the State of Indiana, the State of Wisconsin, and the United States to prevent pseudoephedrine from being used to illegally manufacture methamphetamine.  To attempt to evade these restrictions, the defendant, Robert Michael Quinlan, and several co-conspirators, including Daniel Caswell and Jessica Patterson, purchased products containing pseudoephedrine at different retail locations, including in different states, at different times.  The defendant, Caswell, and Patterson also recruited others to purchase products containing pseudoephedrine for them by offering either money or methamphetamine in exchange for their assistance.  The defendant and Caswell then used the pseudoephedrine that they had obtained to illegally manufacture methamphetamine.

Records of various stores (Wal-Mart, CVS, and Walgreens) located in Illinois, including Watseka, Illinois, in the Central District of Illinois, Indiana, and Wisconsin establish that from February 21, 2006 to April 9, 2007, the defendant purchased at least 22 boxes containing 440 pills of 120 milligrams of pseudoephedrine, for a total of 52.8

- 5 -

grams of pseudoephedrine.  Records of these same stores during the same time period

establish that during this same time period coconspirator Daniel Caswell purchased at

least 9 boxes containing 180 pills of 120 milligrams of pseudoephedrine, for a total of

21.6 grams of pseudoephedrine, and that Jessica Patterson purchased at least 7 boxes

containing 140 pills of 120 milligrams of pseudoephedrine, for a total of 16.8 grams of

pseudoephedrine.  During the same time period, the logs establish that several other co-

conspirators obtained boxes of pseudoephedrine for the defendant's use in

manufacturing methamphetamine.  The 52.8 grams of pseudoephedrine purchased by

the defendant alone was converted into well in excess of five grams of

methamphetamine (actual).

During the course of the conspiracy, the defendant and Caswell traveled together

to various anhydrous ammonia tank farms in Iroquois County and elsewhere, where

Caswell stole anhydrous ammonia from the tanks and placed it in an improvised

container, such as a gallon milk jug with a funnel consisting of an upside down 2 liter

plastic bottle with the bottom cut off attached to the milk jug opening with electrical

tape.

At least twenty times from March 2006 to July 2006, the defendant and Caswell

went to various rural locations in Iroquois County, in the Central District of Illinois,

including Sugar Creek Bridge (also known as Schlief's Bridge, near 950 North 2720 East

County Road) and Miller's Bridge (near 760 North 2040 East County Road), where they

used the pseudoephedrine pills, anhydrous ammonia, and other items (such as lithium

- 6 -

batteries, camp fuel, coffee filters, funnels, jars, drain cleaner, salt, and tubing) to manufacture methamphetamine.  During the course of the conspiracy, they manufactured well in excess of five grams of actual methamphetamine.  After manufacturing the methamphetamine, they weighed it and split it between themselves, as well as provided a small amount to any person who had provided them with any pseudoephedrine pills.  After Caswell was arrested in July 2006, the defendant continued to obtain pills himself and from others to manufacture methamphetamine.

On August 2, 2006, Trooper Ken Massey of the Illinois State Police located a methamphetamine lab dump site near Miller's Bridge, consisting items typically used in the manufacture of methamphetamine, including plastic one gallon jars, white jar lids (one of which had a hold drilled in it), rubber gloves, pliers, plastic funnels, and yellow Dollar General bags.  A coconspirator who lived on the only road leading to the dump site, as well as a coconspirator who had bought pills for the defendant, had both observed the defendant and Caswell on occasions go together to Miller's Bridge around midnight or later.  The defendant and Caswell provided the coconspirator living near Miller's Bridge with methamphetamine in exchange for him acting as a lookout for persons traveling down the road.

On November 14, 2006, troopers with the Illinois State Police conducted surveillance on the defendant's residence at 212 West Frederick Street, Milford, Illinois. Around 9:08 p.m., they observed the defendant leave his residence in his black Plymouth Duster and drive towards the area of Sugar Creek Bridge.  The vehicle

- 7 -

returned to the residence, but left again around 10:00 p.m., this time with a coconspirator (who had purchased three boxes of pseudoephedrine pills for the defendant in the previous 40 days) driving. The coconspirator drove to Sugar Creek Bridge and stopped. After the vehicle left the bridge, the troopers pulled it over because the coconspirator's license was suspended. The coconspirator eventually admitted she had dropped off the defendant at Sugar Creek Bridge. A little while later, the troopers observed the defendant walking a short distance from Sugar Creek Bridge. He was carrying items typically used in manufacturing methamphetamine, including a funnel with the end cut off, an opened package of coffee filters, wire cutters, vice grips, two flashlights, and a yellow Dollar General bag.

A short time later, in the early morning hours of November 15, 2006, the troopers went to Sugar Creek Bridge where they found a clandestine methamphetamine lab under the bridge, including an improvised anhydrous ammonia container consisting of a one gallon plastic milk jug with a two liter plastic bottle taped together at the openings by electrical tape, empty packaging for lithium batteries, stripped lithium batteries, five coffee filters with white and pink pill matter residue, and two empty one gallon containers of Ozark travel camp fuel. The milk jug contained a liquid and had frost on the bottom, consistent with containing anhydrous ammonia; the troopers performed a Draeger test, which confirmed the presence of anhydrous ammonia.

The filter seized from the defendant, the seized coffee filters, and sections of electrical tape from the improvised anhydrous ammonia container were sent to the

- 8 -

Illinois State Police forensic science laboratory.  Forensic Scientist David VanWingeren

determined that the residue from the funnel contained both methamphetamine and

pseudoephedrine or ephedrine.  He determined that the residue from the coffee filters

contained either pseudoephedrine or ephedrine.  Forensic Scientist Lauren Wicevic

determined that the electrical tape contained two latent prints that had been made by

the defendant.

## WAIVER OF RIGHTS BY PLEADING GUILTY

12.    By entering a Plea of Guilty, the defendant is waiving the following rights,

among others:

a.    The right to plead not guilty or persist in the plea of not guilty if

already made.  If the defendant persisted in a plea of not guilty to the charges the

defendant would have the right to a public and speedy trial.

b.    The right to a trial by jury.  The defendant has an absolute right to a

jury trial.  The jury would be composed of twelve persons selected at random.  The jury

would have to agree unanimously before it could return a verdict of either guilty or not

guilty.  The jury would be instructed that the defendant is presumed innocent, and that

it could not convict the defendant unless, after hearing all the evidence, it was

persuaded that the United States had met its burden of proving the defendant guilty

beyond a reasonable doubt.  The defendant could also ask for a trial by the Judge

instead of a trial by a jury.

- 9 -

       c.     The right to the assistance of counsel at trial.  The defendant has the right to be represented by an attorney at every stage of the proceedings and, if the court finds the defendant is unable to afford an attorney, one will be appointed to represent the defendant at no cost to the defendant.

       d.     The right to confront and cross-examine adverse witnesses.  At a trial, the United States would be required to present its witnesses and other evidence against the defendant.  The defendant would be able to see and hear those government witnesses and the defendant's attorney would be able to cross-examine them.  In turn, the defendant's counsel could present witnesses and other evidence on the defendant's behalf.  If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the court.

- 10 -

e.      The right against compelled self-incrimination.  At a trial, the

defendant would have a privilege against self-incrimination so that the defendant

coulddecline to testify, and no inference of guilt could be drawn from the defendant's

refusal to testify.  If the defendant desired to do so, the defendant could testify on the

defendant's own behalf.

Respectfully submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
FAX: 217-373-5891
eugene.miller@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2007, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

>    John C. Taylor
>    Assistant Federal Defender
>    300 W. Main St.
>    Urbana, IL 61801

>    s/Eugene L. Miller
>    Eugene L. Miller, Bar No. IL 6209521
>    Assistant United States Attorney
>    United States Attorney
>    201 S. Vine St., Suite 226
>    Urbana, IL 61802
>    217/373-5875
>    FAX: 217-373-5891
>    eugene.miller@usdoj.gov